AO 106 (Rev. 04/10) Application for a Search Warrant        AUTHORIZED AND APPROVED/DATE:    EMJ 1/04/2024

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No.  MJ-24-11-STE
IN THE MATTER OF THE SEARCH OF INFORMATION )
ASSOCIATED WITH FACEBOOK USER ID kalub.robinson THAT IS )
STORED AT PREMISES CONTROLLED BY META PLATFORMS INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A," which is attached and incorporated by reference herein.

located in the __Northern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of Fentanyl |
| 21 U.S.C. 846 | Drug Conspiracy |

The application is based on these facts:

See attached Affidavit of DEA Special Agent Brook J. Wilson, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Brook J. Wilson, Special Agent, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: Jan 4, 2024

_____
Judge's signature

City and state: Oklahoma City, Oklahoma       SHON T. ERWIN, U.S. MAGISTRATE JUDGE
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **kalub.robinson** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS INC. | Case No. MJ-24-11-STE<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brook J. Wilson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID 100011472162862.

2. I, Brook J. Wilson, am a Special Agent with the Drug Enforcement Administration ("DEA") currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to

conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

3. I have been a Special Agent since October of 2014, having previously worked as a United States Border Patrol Agent from 2006 until 2014. After successfully completing the DEA training academy at Quantico, Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona. In October of 2019 I was transferred and currently work in the Oklahoma City District Office in Oklahoma City, Oklahoma. I am currently assigned to the Tactical Diversion Squad.

4. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations to include the following: undercover operations, surveillance, Title III investigations, search warrants, arrests, reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

5. I have had conversations with and have been in the company of other experienced local, state, and federal law enforcement officers, as well as prosecuting attorneys representing both state and federal systems, concerning narcotics and dangerous drug trafficking activities and criminal violations.

6. Also, I have worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. In the

course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

7. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 have been committed by Kalub ROBINSON and Jordan STICKNEY with these violations relating to the overdose death of Morgan Kemery. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**PROBABLE CAUSE**

9. On December 5, 2023, officers with the Blanchard Police Department ("BPD") responded to 619 N. Monroe, Blanchard, Oklahoma 73010 (located within the Western District of Oklahoma) in reference to an unresponsive female at the residence. Upon arrival at the residence, it was determined that the subject, Morgan Kemery ("Kemery"), was deceased. A search of the area surrounding Kemery revealed a cellular telephone belonging to Kemery, a bundle of white bar tablets, and a piece of tinfoil with residue that appeared to have been used recently. Believing this to be a scene of a suspected fentanyl overdose death, BPD contacted the DEA Oklahoma City District Office, Tactical Diversion Squad.

3

10. On December 6, 2023, investigators with the DEA responded to assist and were able to conduct a field test of the tinfoil collected by BPD. The residue on the tinfoil tested presumptively positive for the presence of fentanyl. The bar tablets seized appeared to investigators to be counterfeit, Xanax-styled benzodiazepines and did not test for fentanyl. BPD gave investigators Kemery's cellular telephone, with the passcode that had been provided by Kemery's boyfriend. Investigators were able to identify Facebook Messenger messages (utilizing Kemery's Facebook username "Morgan Kemery" with Facebook account "morgan.kemery.3") between Kalub ROBINSON and Kemery on December 4, 2023. In these messages, ROBINSON and Kemery discuss needing to be careful around fentanyl, as well as the prices for Xanax tablets. Additionally, investigators located a pending CashApp transaction between Kemery and an account with the name Kalub Lynn Robinson for $21 on December 4, 2023 at 2:21 a.m. This is the only Cashapp transaction identified on December 4, 2023.

11. Investigators identified Dalton Vance ("Vance") as one of the last people who had been with Kemery, based on information in Kemery's cellular telephone. After an interview conducted with Vance, investigators spoke with Vance's mother, Misty Janke ("Janke"), who had an hour-long conversation with Kemery the night prior to Kemery's death. Janke stated that she knew some people who might be of interest to investigators based on her knowledge of the substance abuse issues of Kemery and her friends/associates. Janke provided the name Jordan Stickney ("Stickney") as an associate of Kemery. Investigators located Stickney at her residence, and she agreed to assist investigators in any way possible.

12. Stickney stated that she has an addiction to fentanyl and that she uses approximately 20 fentanyl tablets a day. Stickney stated that Kemery visited her (Stickney)

4

shortly before Kemery's death to obtain some fentanyl, but that she (Stickney) did not provide Kemery with any fentanyl. Stickney stated that Kemery then met with ROBINSON, which was later corroborated by entering ROBINSON's address into the GPS in Kemery's cellular telephone.

13. Investigators located ROBINSON as his residence. Task Force Officer Tim Spratt read ROBINSON his *Miranda* rights, and ROBINSON agreed to speak with investigators. ROBINSON stated that, on December 4, 2023, he sent Kemery (via his cellular telephone) his address and that he and Kemery had subsequently smoked fentanyl together that ROBINSON had provided. ROBINSON confirmed the CashApp transaction between himself and Kemery but stated that the $21.00 USD was payment for the fentanyl that they smoked together, as well as money for him (ROBINSON) to play a game on his cellular phone. Investigators then showed ROBINSON the Facebook Messenger messages between himself and Kemery on the morning of December 4, 2023, subsequent to their meeting the evening prior. In this message string, ROBINSON is using Facebook username Kalub Robinson with Facebook account "kalub.robinson" with a picture of ROBINSON attached to the account.

**ROBINSON: U good? Hey (waving hand emoji)**

**KEMERY: yes!!!**

**ROBINSON: Like it**

**ROBINSON: ?**

**KEMERY: yes, sorry I've been on the phone with probation and making doctors appointments but I'm all good and being careful with it!**

14. The cellular telephone provided to investigators was identified by ROBINSON as his cellular telephone (which is the pink iPhone now in the possession of DEA). ROBINSON gave investigators the passcode to his cellular telephone and provided it to investigators. ROBINSON stated that he had only been utilizing this cellular telephone for a few days because he broke his previous phone some time during the past weekend (December 2-3, 2023). ROBINSON showed investigators messages in his cellular telephone between himself and Stickney via the Facebook Messenger app. Stickney was utilizing Facebook username "Jordan Stickney," with Facebook account "100005482546155" on December 6, 2023. In the messages he showed investigators ROBINSON and Stickney discussed using illicit drugs together and detailed how Kemery had interacted with them both (ROBINSON and Stickney) about fentanyl. Stickney wrote, "She was gonna get it no matter what." ROBINSON was subsequently arrested on tribal charges for distribution of fentanyl, and the cellular telephone was seized by DEA investigators.

15. I believe that this Affidavit provides sufficient evidence that probable cause exists to require Facebook to furnish stored data for the Facebook username "Kalub Robinson" (Facebook Account: kalub.robinson). A preservation request has been submitted to Facebook in order to preserve the stored data related to Facebook username "Kalub Robinson" (Facebook Account: kalub.robinson). I therefore request a search warrant requiring Meta Platforms Inc., to furnish data for this Facebook account. Meta Platforms Inc., is in the business of providing electronic communication services to its subscribers. This service includes maintaining records related to subscriber information, communication between subscribers, and stored data utilized by subscribers and maintained by provider pursuant to their service agreements. As a result, the

6

types of information sought by the Government are in fact as a regular course of business kept by Meta Platforms Inc.

16. In general, providers like Meta Platforms Inc., asks each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

17. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

18. In some cases, Facebook users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

Case 5:24-mj-00011-STE   Document 1   Filed 01/04/24   Page 9 of 20

19. On December 29, 2023, Meta Platforms Inc. was served with a preservation letter under 18 U.S.C. § 2703(f) related to Facebook username "Kalub Robinson" (Facebook Account: kalub.robinson).

20. Meta Platforms Inc. owns and operates a free-access social networking website named Facebook that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

22. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

8

23. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a

9

user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

26. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

27. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

29. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

10

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

33. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

34. Social networking providers like Meta Platforms Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records

of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35.  As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta Platforms Inc., can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.

Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36. Therefore, the computers of Meta Platforms Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook (Meta Platforms Inc.) to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## REQUEST FOR SEALING

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until January 4, 2025. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brook J. Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on __Jan 4, 2024__

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID kalub.robinson that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including for user ID kalub.robinson, full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities November 15, 2023 thru December 6, 2023;

(c) All photos and videos uploaded by those user IDs and all photos and videos uploaded by any user that have that user tagged in them from November 15, 2023 thru December 6, 2023, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

16

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, those user IDs, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from November 15, 2023 thru December 6, 2023, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from November 15, 2023 thru December 6, 2023;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

17

    (o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

    (p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

    (q)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841 and 846 (Drug Trafficking and Conspiracy), involving Kalub Robinson since November 15, 2023 thru December 6, 2023, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a) Evidence indicating the distribution of illegal drugs

    (b) Communications between ROBINSON and possible sources of supply of illegal drugs

    (c) Preparatory steps taken in furtherance of the scheme

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

19